Marilyn KNECHTEL, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (MARRIOTT COR-
PORATION), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 26, 2006.

Decided Aug. 24, 2006.

William G. Cohen, New Castle, for peti-
tioner.

William P. Copetas, Pittsburgh, for re-
spondent.

BEFORE: McGINLEY, Judge, and
FRIEDMAN, Judge, and
LEADBETTER, Judge.

OPINION BY Judge LEADBETTER.[1]

Marilyn Knechtel (Claimant) petitions
for review of the December 22, 2005, order
of the Workers' Compensation Appeal
Board (Board), which affirmed the May 18,
2004 decision and order of a Workers'
Compensation Judge (WCJ) granting the
petition to compel a physical examination
filed by Marriott Corporation (Employer).
We affirm.

Claimant receives benefits for a June
21, 1995, knee injury pursuant to a notice
of compensation payable, amended to add
depression to the description of Claim-
ant's work injury. In March 2004, Em-
ployer requested Claimant to submit to
two examinations, one with an orthopedic
surgeon and one with a psychiatrist.
Claimant did not object to the scheduled
appointment with the orthopedist. How-
ever, Claimant expressed concern about
the psychiatrist selected by Employer.
In a March 30, 2004 letter to Employer,

1. This case was reassigned to the author on    June 21, 2006.

citing complaints by former clients about the accuracy of that psychiatrist's reports, Claimant's counsel requested that someone be allowed to accompany Claimant and make an audio recording of the psychiatric evaluation.[2] Employer refused this request and subsequently filed a petition to compel Claimant to submit to the psychiatric evaluation.[3]

Thereafter, Claimant advised Employer that she was willing to submit to the psychiatric evaluation. Claimant further informed Employer that she wished to have a health care provider of her choice participate in the examination, pursuant to Section 314(b) of the Workers' Compensation Act (Act), which provides in part as follows:

> In the case of a *physical* examination, the employe shall be entitled to have a health care provider of his own selection, to be paid by him, participate in such examination requested by his employer or ordered by the workers' compensation judge.

77 P.S. § 651(b) (emphasis added).[4]

On May 18, 2004, the WCJ issued a decision and order granting Employer's petition to compel as well as Claimant's request to have her health care provider participate in the examination. However, the WCJ rejected Claimant's assertions that "participate" means allowing the health care provider to tape record the evaluation, question the evaluator, make comments or otherwise assist Claimant during the procedure. The WCJ specifically ordered that Claimant's health care provider would be permitted to take notes and request brief recesses during the course of the evaluation to confer with Claimant, but he or she would not be permitted to ask questions of Employer's psychiatrist or comment on the psychiatrist's questions. (WCJ's Findings of Fact, No. 2.) At Claimant's request, the WCJ stayed the directive to submit to the evaluation pending appeal of his order.

Claimant appealed to the Board, arguing that the WCJ erred in restricting the rights afforded her under Section 314(b) of the Act by prohibiting her health care provider from actually "participating" in the examination. Claimant asserted that her health care provider should be permit-

---

**2.** Claimant's counsel indicated that Claimant was not sophisticated or articulate and would be unable to testify in rebuttal to Employer's psychiatrist. He asked Employer to voluntarily provide Claimant the protections afforded by Pa. R.C.P. No. 4010, which authorizes an audio recording of an examination but is not applicable to workers' compensation proceedings.

**3.** Section 314(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 651(a), states as follows:
(a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination or

expert interview ... a workers' compensation judge assigned by the department may, upon petition of the employer, order the employe to submit to such examination or expert interview.... The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, shall deprive him of the right to compensation, under this article, during the continuance of such refusal or neglect....
77 P.S. § 651(a).

**4.** Neither party has raised the issue of whether Section 314(b), which specifically applies to "a physical examination," also applies in the context of a *psychiatric* examination, and accordingly, we do not decide that issue.

ted to take an active part in the examination, which would include objecting to any questions asked by Employer's psychiatrist, rephrasing those questions and asking questions of his or her own.

The Board first noted that our courts have yet to address the issue raised here, *i.e.*, the extent to which a claimant's health care provider is permitted to participate in an examination by the employer's medical expert. The Board then concluded that our decision in *Wolfe v. Workmen's Compensation Appeal Board (Edgewater Steel Company)*, 161 Pa.Cmwlth.361, 636 A.2d 1293, *appeal denied*, 537 Pa. 669, 644 A.2d 1205 (1994), is instructive. In *Wolfe*, the claimant argued that he had the right to have an attorney present during a physical examination by the employer's doctor. Our court rejected this argument, noting that Section 314(b) specifies the type of individual who may be present. We also focused on the purpose of such examinations:

> The physician's examination is a source of information regarding the employee's disability for the [WCJ] to consider when the [WCJ] makes findings of fact. It is when these facts are presented, and in preparation for the presentation of these facts at deposition and during the hearing, that the adversarial procedure begins. If we were to push the adversarial procedure back to the doctor's office by involving attorneys for both parties in the medical examinations, we would have attorneys objecting and interrupting, and the equivalent of a hearing or deposition taking place during a physical examination. This is not the atmosphere in which a fair and reasonable medical examination can take place.

*Id.* at 1296.

The Board concluded that allowing Claimant's health care provider to take the active role in the examination suggest-

ed by Claimant would effectively "turn the examination into an adversarial procedure, with Claimant's health care provider acting as proxy for Claimant's counsel, thereby resulting in an atmosphere in which a fair and reasonable medical examination could not take place." (Board's op. at 5.) The Board stated that Claimant's concern regarding the accuracy of her medical history, as recorded by Employer's psychiatrist, may be alleviated if she provides a written history during the examination. The Board further stated that, if Employer files a petition based on its psychiatrist's report, Claimant can present rebuttal testimony from her health care provider with respect to what he or she observed during the examination. For these reasons, the Board stated it did "not believe that active participation in the examination by [Claimant's] health care provider is necessary to protect Claimant's interests." (Board op. at 6.) Accordingly, the Board affirmed the WCJ's decision, and Claimant now appeals to this court.

On appeal, Claimant asserts that, applying the principles of statutory construction to determine the meaning of "participate" as used in Section 314(b) of the Act, her health care provider must be permitted to not only attend the examination but also to take an active role during it. Specifically, Claimant asserts that the WCJ erred in granting Employer's petition for an independent psychiatric examination while limiting her attending health care provider's participation to taking notes and to conferences with the Claimant during brief recesses in the examination. Claimant challenges the WCJ's conclusion that her provider cannot video or audio tape record the examination, question the examiner, comment on the examination process and assist the Claimant during the examination by rephrasing questions and

asking additional questions during the examination.

Neither the Act nor Bureau regulations defines the term "participate." The common meaning of the word is "to take part in something (as an enterprise or activity) usu. in common with others." Webster's Third New International Dictionary 1646 (1993). This dictionary definition provides very little assistance in discerning what the legislature intended in enacting Section 314(b); that is to say, what degree of active involvement qualifies as "taking part in" depends on the enterprise or activity. Insofar as a medical examination essentially involves careful observation of the examinee's responses to questions and to physical or psychological testing, the opportunity to attend and observe certainly constitutes a significant degree of participation as defined above. Even accepting the premise that the ordinary meaning of the word contemplates a role more active than observation, we cannot conclude that the legislature intended that a claimant's health care provider participate to such an extent that the examination becomes disrupted by questioning and disagreement of an adversarial nature regarding the examiner's methods and procedures. *Cf. Wolfe.* An examination disrupted in this manner would likely not yield the information regarding the employee's disability that it is intended to provide. *Id.* This is particularly true of a psychiatric exam.

We conclude that, in providing for the participation of a claimant's health care provider, the legislature intended to afford the opposing expert a first-hand view of the exam process as a foundation for later rebutting in testimony the validity of the exam results. Attendance and observation well serve this purpose. In view of our understanding as to the meaning of the term "participate" and the purpose for allowing participation, we discern neither a violation of the Act nor an abuse of discretion in the limits imposed by the WCJ on the activities of Claimant's health care provider during the examination in this case.

Accordingly, we affirm.

### ORDER

AND NOW, this 24th day of August, 2006, the order of the Workers' Compensation Appeal Board in the above captioned is hereby AFFIRMED.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Section 314(b) of the Workers' Compensation Act (Act)[1] states in part that "the employe shall be entitled to have a health care provider of his own selection, to be paid by him, *participate* in such examination requested by his employer...." 77 P.S. § 651(b) (emphasis added). Interpreting this provision, the majority acknowledges that the common meaning of the word "participate" is *"to take part in something (as an enterprise or activity) usu. in common with others."* (Majority op. at 672.) Nevertheless, the majority concludes that when the legislature used the word "participate" in section 314(b) of the Act, the legislature actually meant to say "attend and observe." (*See* majority op. at 672.) Because the legislature did not use either of those words, but instead selected a term that, by definition, means more than "to silently sit by," I disagree.

Moreover, the majority's holding goes far beyond the question presented on appeal, which is whether the restrictions imposed by the WCJ on the level of participation of Claimant's health care provider constitute an error of law. The WCJ held

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 651(b).

that Claimant's health care provider could not ask questions or make comments but could take notes and request brief recesses to confer with Claimant during the course of the evaluation. The majority not only approves of these limitations, but it further holds that permitting no more than the mute presence of a claimant's health care provider affords a claimant the right provided by section 314(b). In my view, the majority's overbroad decision conflicts with both the plain meaning of the statute and with the principles of statutory construction recently restated in *Macomber v. Workers' Compensation Appeal Board (Penske Transportation Services)*, 837 A.2d 1283 (Pa.Cmwlth.2003), *appeal denied*, 577 Pa. 738, 848 A.2d 931 (2004).

In *Macomber*, we sought to define the words "has a place of business," as used in section 305.2 of the Act, added by section 9 of the Act of December 5, 1974, P.L. 782, 77 P.S. § 411.2. We set forth our analysis as follows:

> Under principles of statutory construction, "[w]ords and phrases shall be construed according ... to their common and approved usage." Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). **Here, the legislature did not use the specific words "owns or leases," but the more general term "has." We decline to impose on that term a more restrictive meaning than the "common" one, when there is no indication that the General Assembly intended the word "has," as used in Section 305.2(d), to be so narrowly construed.** The word "has," can also mean "to be in a position to exercise (as a right or privilege)." Webster's Third New International Dictionary of the English Language, 1039 (unabridged 1993). Therefore, this

meaning, a common one, must also be afforded some weight.

*Macomber*, 837 A.2d at 1287 (footnote omitted) (emphasis added).

The majority fails to follow *Macomber* and fails to apply these principles of statutory construction to the present case. Because the General Assembly did not use the words "attend" or "observe" in section 314(b) of the Act, and absent any indication that the General Assembly intends the term "participate" to be narrowly construed, I would decline to impose a more restrictive meaning than the "common one" on that term. *Macomber*. Instead, based on the plain language of section 314(b), I would hold that Claimant's health care provider must be permitted to take an *active* part in the examination.[2]

In addition, unlike the majority, I would recognize that *Wolfe v. Workmen's Compensation Appeal Board (Edgewater Steel Company)*, 161 Pa.Cmwlth.361, 636 A.2d 1293, *appeal denied*, 537 Pa. 669, 644 A.2d 1205 (1994), is significantly distinguishable from the present case. *Wolfe* involved a claimant's request to have an *attorney* attend a physical examination. I see a critical difference between an attorney, whose function is to advocate for his client's legal rights, and a health care provider, whose function is to provide medical care and treatment, and I believe that the legislature also recognized this distinction when it enacted section 314(b) of the Act. Moreover, I would not impugn the medical profession by basing my decision on speculative fears that its members are not capable of conducting themselves appropriately.

The fact that the "participation" permitted by the legislation presents a potential for interference with the exercise of an employer's rights under section 314(a) of

---

2. The definitions of "active" include "engaged in an action or activity: **participating.**"

Webster's Third New International Dictionary 22 (1993) (emphasis added).

the Act[3] does not provide grounds for this court to restrict the rights that the legislature has afforded claimants by way of section 314(b). Unless and until the legislature establishes more specific parameters governing the extent of the participation permitted by section 314(b), I believe questions concerning the permissible conduct of a claimant's "participating" health care provider must be decided in accordance with the standards of the medical profession.[4] In the absence of evidence concerning those standards, neither the workers' compensation authorities nor this court has the expertise necessary to make such determinations.[5]

Accordingly, I would reverse that portion of the WCAB's order affirming the restrictions imposed by the WCJ with respect to the participation by Claimant's health care provider in the scheduled psychiatric examination.

**3.** Section 314(a) of the Act, 77 P.S. § 651(a), provides in part that an employee must submit to an examination by a health care provider upon the request of the employer.

**4.** An employer who believes that these standards have been violated will not be without recourse; for example, an employer may file a modification petition asserting that the health care provider's conduct vitiated the claimant's submission to the examination.

**5.** A health care provider conducting a psychiatric examination, which is conversational in nature, may well believe that the type of recesses and conferences ordered by the WCJ in this case constitute interference with the examination.